IN THE CIRCUIT COURT OF ST. FRANCIS COUNTY, ARKANSAS

**STEVEN MELTON**                                                                                      **PLAINTIFF**

**VS.**                               NO. 62CV-21-143-4

**CITY OF FORREST CITY, AR, and**                                                         **DEFENDANT**
**MAYOR CEDRIC WILLIAMS, IN**
**HIS INDIVIDUAL CAPACITY**

## COMPLAINT

COMES NOW Plaintiff, Steven Melton, by and through Counsel, David Hogue, and for his Complaint against the Defendants, hereby states as follows:

### INTRODUCTION

1. By any and all standards, Steven Melton was an exceptional firefighter for Forrest City, Arkansas, and as such, he served his community, city, and country by fulfilling his lifelong dream.

2. Despite this, in early summer of last year, Forrest City Mayor Cedric Williams called Steven Melton and Fire Chief Shane Dallas to a meeting at the mayor's office on June 25, 2020, and there placed Melton on Administrative Leave for investigation of a Facebook post Melton made on his private account during off time.

3. The investigation was completed only one day later and resulted in Melton's public termination on June 26, 2020, as determined and intentionally publicized by Mayor Williams.

4. Melton submitted a grievance letter regarding his termination to Mayor Williams on July 3, 2020.

5. Williams responded to Melton's grievance letter asserting the "facts of the investigation" and reiterating Melton's termination in a letter dated July 8, 2020.

6. Citing Williams's characterization of the "negative attention" of his June 23 Facebook post, Melton appealed his termination, reiterating his religious conviction and freedom of speech and expression claim in a letter dated July 14, 2020.

7. Melton filed a timely charge with the EEOC, and EEOC dismissed the case on October 9, 2020, and issued a "Right to Sue" letter.



FILED

AUG 17 2021

TIME_____M
BETTE S. GREEN, CLERK
ST. FRANCIS COUNTY

## JURISDICTION AND VENUE

8. This action arises under the Arkansas State Constitution, particularly Article Two, Section 6; and under the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq.

9. This Court has original jurisdiction over Plaintiff's claims by operation of the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq.

10. This Court has authority to issue the requested declaratory relief under the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq.

11. This Court has authority to issue the requested injunctive relief under the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq.

12. This Court is authorized to award the requested damages under the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq.

13. This Court is authorized to award attorney's fees under the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq.

14. Venue is proper under the Arkansas Civil Rights Act, Arkansas Code Annotated §§ 16-123-101 et seq. because this claim arose there and because, upon information and belief, all Defendants reside within the District.

## IDENTIFICATION OF PLAINTIFF

15. Steven Melton ("Melton") is a citizen of the United States and a resident of the City of Forrest City.

16. Melton is a devout Christian.

17. Melton is a member of Landmark Baptist Church in Forrest City, Arkansas.

## IDENTIFICATION OF DEFENDANTS

18. The City of Forrest City is a body politic which is able to sue and be sued in its corporate name.

19. The City has adopted the policies and procedures described herein and is responsible for their enforcement against Melton.

20. Cedric Williams is, and was at all times relevant to this Complaint, Mayor of the City of Forrest City.

21. Mayor Williams is responsible for the City's administration and policymaking, including the policies and procedures described herein and for their enforcement against Melton.

22. Mayor Williams is sued in his individual capacity.

23. The City acquiesces in, sanctions, and supports Mayor Williams' enforcement of the City's policies and procedures described herein against Melton.

## STATEMENT OF FACTS

24. By all standards, Steven Melton was an exceptional firefighter, and as such, he served his community, city, and country by fulfilling his lifelong dream.

25. On or around June 9, 2020 Melton made a Facebook post that portrayed one of his deeply held religious beliefs, on his own time, from his own computer. Exhibit A

26. On June 24, 2020, Melton deleted the post, at the request of a friend.

27. Mayor Cedric Williams called Melton and Chief Shane Dallas to a meeting at the mayor's office on June 25, 2020.

28. Chief Dallas informed Melton of the meeting by text message just twenty minutes before it was to begin.

29. With one minute to go before the meeting, Chief Dallas texted Melton that the reason the mayor called them both to his office was Melton's since-deleted Facebook post.

30. Melton was placed on administrative leave on June 25, 2020.

31. Mayor Williams wrote in a letter dated June 26, 2020, that "the incident that was brought to light on 6-25-2020" was the reason for Melton's suspension.

32. The investigation was completed on and resulted in Melton's termination on June 26, 2020, as determined by Mayor Williams. Exhibit B

33. Melton submitted a grievance letter to Mayor Williams dated July 3, 2020. Exhibit C

34. Williams responded to Melton's grievance letter asserting the "facts of the investigation" and reiterating Melton's termination in a letter dated July 8, 2020. Exhibit D

35. Citing Williams' characterization of the "negative attention" of his June 23 Facebook post, Melton appealed his termination, reiterating his religious conviction and freedom of speech and expression issues in a letter dated July 14, 2020. Exhibit E

36. Arkansas Workforce Services disqualified Melton's unemployment claim on September 21, 2020.

37. Melton filed a timely charge with the EEOC, and EEOC dismissed the case as not falling within the statute they enforce on October 9, 2020 and issued a "Right to Sue" letter. Exhibit F

38. Regardless of the disqualification and dismissal of appeals, Melton did not violate the written terms and conditions of the City of Forrest City Personnel Handbook.

## ALLEGATIONS OF LAW

39. The government cannot discriminate against or punish employees because of their religious beliefs or speech.

40. Defendants terminated Melton for holding historically Christian beliefs about abortion and making those views known in a self-published, non-work-related, social media post.

41. Public employees do not renounce their citizenship when they accept government employment.

42. Public employers may not condition government employment on the relinquishment of constitutional rights.

43. Speech by citizens on matters of public concern lies at the heart of the First Amendment and the rights enumerated in the Constitution of the State of Arkansas.

44. Government employers cannot extend their reach to censor employees' religious expression that is unrelated to their work.

45. Melton has the constitutional right to believe as he will and to act and associate according to his religious beliefs.

46. Government employees have a Constitutional right to distribute religious materials as they wish while on private time.

47. Defendants terminated Melton for exercising those rights.

48. All of the acts of the Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of Forrest City and the State of Arkansas.

49. Melton is suffering economic injury and irreparable harm as a direct result of the conduct of the Defendants.

50. Unless the Defendants' policies and practices challenged herein are enjoined, Melton will continue to suffer economic and irreparable injury.

### FIRST CAUSE OF ACTION
### Article Two, Section 6 Right to Freedom of Speech: Retaliation

51. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-50 of this Verified Complaint.

52. The Free Speech Clause of the First Amendment to the U.S. Constitution, reiterated in Article Two of the Arkansas Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, protects the right of the government employees to speak as citizens on matters of public concern.

53. Article Two of the Arkansas Constitution as well as the Free Speech Clause of the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, also protects the rights of government employees as citizens on matters unrelated to their work.

54. Melton published an image that expressed his view on abortion, within the context of then-current events.

55. Religious speech, including speech reflecting historical Christian beliefs about abortion, is of concern to the public at large.

56. Melton's post reflected a deeply-held religious conviction that in no fashion burdened the city of Forrest City, or even implied a representation of a City position.

57. Melton intended his post to help his friends and other members of the public think more deeply about abortion within the context of race protests and riots.

58. Religious speech enjoys a form of First Amendment protection as well as protection under Article Two of the Arkansas Constitution and is central to the meaning and purpose of the First Amendment, as evidenced by the Free Speech and Establishment Clauses.

59. Melton's post, as religious expression, was completely unrelated to his government employment.

60. Melton's religious expression did not threaten the City's ability to administer public services and was not likely to do so.

61. Melton's religious expression did not interfere with the fire department's internal operations or with internal order and discipline and was not likely to do so.

62. Melton's interest in engaging in religious expression as a citizen outweighs any legitimate interest Defendants may have in promoting the efficiency of public services.

63. Defendants unlawfully terminated Melton because his protected religious expression contained a belief about abortion, and stated it in a manner they wished to cancel.

64. Melton at all times performed his duties at work in a satisfactory manner.

65. Melton's protected religious expression about abortion was the sole reason Defendants terminated his employment.

66. Defendants would not have terminated Melton's employment in the absence of his protected religious expression about abortion.

67. Defendants' termination of Melton was not based on his party affiliation.

68. Because Melton's protected religious expression concerned spiritual topics unrelated to his job, Defendants must overcome strict scrutiny to justify censoring his speech.

69. As Melton's protected religious expression concerned spiritual topics unrelated to his job, Defendants cannot rely upon their disagreement with, or the purported unpopularity of, Melton's message to justify discharging him for his speech.

70. Nor can Defendants rely upon some community members' dislike of Melton's message to justify censorship of his expression, as that would constitute an impermissible heckler's veto of protected religious speech.

71. But pursuant to their policies and practices, Defendants discharged Melton because he expressed his religious beliefs and viewpoints in a Facebook post in his private capacity as a citizen on spiritual matters of public concern.

72. In so doing, Defendants have, by policy and practice, retaliated against Melton because of his religious expression and deprived him of his First Amendment right to freely express his beliefs about issues of public concern that are unrelated to his job.

73. Defendants have no rational interest, let alone a compelling interest, in terminating Melton based on his expression of personal religious beliefs about abortion.

74. Defendants' policies and practice are not narrowly tailored to advance any legitimate interest the City may possess because Melton's speech does not implicate any legitimate interest Defendants might assert.

75. Defendants' termination of Melton's employment based on his expression of religious views about abortion published outside of work, unrelated to work, violates the Free Speech

Clause of Arkansas Constitution and the United States First Amendment, as incorporated against the States by the Fourteenth Amendment, both facially and as applied to Melton.

76. By their policy and practice, Defendants, acting under color of state law, have explicitly and implicitly retaliated against Plaintiff for exercising his First Amendment right to freedom of speech as incorporated against the States by the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully prays the court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## SECOND CAUSE OF ACTION
### Right to Freedom of Speech: Viewpoint Discrimination, Overbreadth, Prior Restraint and Unbridled Discretion, and Unconstitutional Conditions

77. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-50 of this Verified Complaint.

78. The Free Speech Clause of the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits the government from engaging in viewpoint discrimination.

79. Viewpoint based restrictions on speech are presumptively unconstitutional and are subject to strict scrutiny even where citizens do not possess a constitutional right to speak in the first place.

80. Pursuant to their policies and practices, Defendants have allowed numerous City employees similarly situated to Melton, including Defendant Williams, to express their beliefs and viewpoints in favor of and approving of various public issues.

81. But Defendants terminated Melton because of his expression of a religious belief viewpoint contrary to abortion.

82. By terminating Melton based on his expression of a religious belief against abortion and allowing other, similarly situated City employees to express viewpoints on socially charged issues, Defendants have, by policy and practice, treated Melton's viewpoint on abortion differently and engaged in viewpoint discrimination.

83. Defendants have no rational, let alone compelling, reason for prohibiting Melton's expression of his religious viewpoints on abortion, which is shared by thousands of other Arkansans.

84. The Free Speech Clause of the First Amendment, incorporated and made applicable to the state by the Fourteenth Amendment, as well as Article Two of the Arkansas Constitution also forbids the government from imposing overbroad restrictions on protected speech.

85. To the extent Defendants' policies and practice forbid employees from engaging in speech on matters of public concern unrelated to their jobs that do not and will not likely disrupt the City's provision of public services or internal operating, they are substantially overbroad and burden a vast array of expression protected by Article Two and the First Amendment.

86. The substantial overbreadth of Defendants' policy and practice chills, deters, and restricts Melton's speech and that of other City employees not before the Court who wish to engage in expression about matters of public concern that are unrelated to their jobs.

87. Indeed, after Melton's termination, City employees who share Melton's Christian views are likely to avoid expressing their religious beliefs about abortion or other socially charged issues for fear of losing their livelihood, as are other City employees who hold viewpoints on subjects unrelated to their jobs with which Defendants disagree.

88. The Free Speech Clause of the First Amendment, incorporated and made applicable to the state by the Fourteenth Amendment, also forbids the government from imposing prior restraints on speech.

89. Any prior restraint on speech bears a heavy presumption against its validity and must satisfy strict scrutiny.

90. Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice constitute prior restraints on speech because they prohibit or censure speech before it can take place.

91. A large portion of the speech to which Defendants' prior restraint policies and practice apply do not involve the subject matter of government employment and take place outside of the workplace.

92. Melton's religious post, in particular, did not relate to his government employment but was written and published during his personal time.

93. The gagging of publication is permitted only in exceptional circumstances that are not present here.

94. Moreover, prior restraints on speech must not grant unbridled discretion to government officials.

95. Defendants' policies and practice provide unbridled discretion to Defendants and other City officials.

96. For example, Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees post on Facebook – contain no objective guidelines or standards to limit officials' discretion in making prior approval decisions, thus leaving officials free to discriminate against Melton's and other city employee's protected viewpoints and expression.

97. The decision whether Melton and other employees may engage in protected speech is left entirely to the whim of Defendants and other City officials.

98. Defendants' policies thus constitute invalid prior restraints, both facially and as applied to Melton, that violate Article Two of the Arkansas Constitution and the Free Speech Clause of the First Amendment, as incorporated against the States by the Fourteenth Amendment.

99. The Unconstitutional Conditions Doctrine also prohibits the government from conditioning a benefit, such as government employment, on the relinquishment of First Amendment rights.

100. Melton and other City employees retain the First Amendment right to believe as they will on religious matters and to act in accordance with those beliefs, including by expressing them publicly in Facebook or other social media posts unrelated to their employment that are published during personal time in their private capacity as citizens.

101. By policy – and an unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice, Defendants have unconstitutionally conditioned the receipt of a state benefit – specifically, government employment – on Melton and other City employees' surrendering of their First Amendment right to engage in religious expression.

102. Defendants' imposition of this unconstitutional condition on public employment by policy – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice, and enforcement thereof, chills, deters, and restricts Melton and other City employees from freely expressing their religious beliefs by jeopardizing their livelihoods.

103. Defendants have no rational, let alone compelling, reason for placing Melton on leave without pay, censoring his religious speech, or terminating his employment.

104. Defendants' policies and practice are not narrowly tailored to advance the City's legitimate interests because Melton's speech does not implicate any legitimate interests Defendants might assert.

105. Defendants by policy and practice, acting under color of state law, have prohibited Melton and other City employees from exercising their clearly established rights to freely speak on matters of public concern, to be free from viewpoint discrimination, to be free from prior restraints that grant officials unbridled discretion to censure speech, and to be free of unconstitutional conditions placed on government employees, all of which are secured by Article Two of the Arkansas Constitution and the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays the court grant the equitable and legal relief set forth in the prayer for relief.

## FIFTH CAUSE OF ACTION
### First Amendment Right to Avoid Religious Hostility: Establishment

106. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-50 of this Verified Compliant.

107. The Establishment Clause of the U.S. and Arkansas Constitutions, First Amendment and Article 2 Section 24, prohibits the government from disapproving of or showing hostility toward a particular religion or religion in general.

108. Pursuant to their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice Defendants have allowed employees similarly situated to Melton, including Defendant Melton, to express secular and religious beliefs and viewpoints in favor of a variety of controversial issues.

109. But Defendants terminated Melton because of his religious beliefs and viewpoints that are contrary to abortion, and the manner in which he expressed it.

110. By terminating Melton, pursuant to their policies and practice, because of his religious beliefs and expression opposed to abortion and allowing other employees to express secular and religious viewpoints supportive of similar issues, Defendants have evinced a discriminatory suppression of private speech that is hostile toward religion.

111. Melton's termination pursuant to Defendants' policies and practices sends the message that religious believers that share his views are second-class citizens, outsiders, and not full members of the community.

112. It also sends the message that Christians who share Melton's beliefs are not eligible for City employment simply as a result of their religious faith.

113. By firing Melton pursuant to their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice, established under color of state law, Defendants targeted for suppression protected expression critical of abortion.

114. Defendants' singling out Melton for unpaid leave, censure, and firing on the basis of his religious viewpoint on abortion, pursuant to their policies and practice deprived Melton of the right to be free from religious hostility secured by the First Amendment.

115. Defendants' polices – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice, both facially and as applied to Melton, thus violate the Arkansas Civil Rights Act, the Arkansas Constitution and the Establishment Clause of the First Amendment.

WHEREFORE, Plaintiff respectfully prays the court grant the equitable and legal relief set forth in the prayer for relief.

### SIXTH CAUSE OF ACTION
### Right to Equal Protection of the Laws

116. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-50 of this Verified Complaint.

117. The Equal Protection Clause of the Arkansas Constitution and the U.S. Fourteenth Amendment requires that the government treat similarly situated persons alike.

118. Religion is an inherently suspect classification under the Equal Protection Clause.

119. Melton, as a Christian and member of a Christian church, belongs to a protected class.

120. Pursuant to their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice, Defendants allowed numerous City employees similarly situated to Melton – including Defendant Melton – to express secular beliefs and viewpoints.

121. But pursuant to their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice, Defendants terminated Melton because of his religious belief and viewpoint against abortion.

122. Defendants thus intentionally discriminated against Melton's religious belief and viewpoint by treating it differently from the speech of other similarly situated City employees, including that of Defendant Williams.

123. When governmental policies – like any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice infringe upon fundamental rights, discriminatory intent is presumed.

124. Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice infringe upon Melton's fundamental rights to freedom of speech, freedom of association, and freedom of religion, among other fundamental rights.

126. Defendants have no rational, let alone compelling, reason for targeting Melton's religious speech for disparate treatment.

127. Defendants' policies and practice are not narrowly tailored to advance any legitimate interest the City may possess because Melton's speech does not implicate any legitimate interests Defendants might assert.

128. Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice violate the Equal Protection Clause of the Fourteenth Amendment both facially and as applied to Melton.

129. Defendants' enactment and enforcement of their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice, under color of state law, which explicitly and implicitly discriminate against Melton on the basis of his religious beliefs and viewpoint deprived him of his clearly established right to equal protection of the laws secured by the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

### SEVENTH CAUSE OF ACTION
### Fourteenth Amendment Right to Due Process: Vagueness

130. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-50 of this Verified Complaint.

131. The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague standards that grant government officials unbridled discretion.

132. Defendants' arbitrary determination of what protected religious expression violates their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice and what protected religious expressions does not violates this norm.

133. Employees of common intelligence must guess and will differ in their views as to what expression will meet with Defendants' approval and be permitted under their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice and what expression will not and be banned.

134. Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice also provide no warning or notice as to what expression will meet with their approval and be permitted and what speech will not and be banned.

135. Instead, Defendants' policies and practices provide them and other City officials with unbridled discretion to determine when employees may engage in protected religious expression thus subjecting the exercise of Melton's and other City employees' fundamental rights to the whim of government bureaucrats.

136. Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice thus violate the Arkansas Due Process Clause and the Due Process Clause of the Fourteenth Amendment, both facially and as-applied to Melton, because they provide no binding guidelines prescribing what protected expression City officials may permit or deny.

WHEREFORE, Plaintiff respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.

## EIGHTH CAUSE OF ACTION
### Right to Due Process: Liberty Interest

137. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-50 of this Verified Complaint.

138. Article 2 Section 8 of the Arkansas Constitution and the Due Process Clause of the Fourteenth Amendment protects the rights that are fundamental and implicit in the concept of ordered liberty, including the right to earn a livelihood in a common calling free from unreasonable government interference.

139. Melton has a protected liberty interest in working and earning a living and establishing a home and position in his community.

140. But pursuant to their policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a post – and practice, Defendants irrationally terminated Melton for speech against pro-abortionists or dark-skinned individuals despite the fact that he has never discriminated against, nor been accused of discriminating against, anyone on the basis of a protected characteristic.

141. Defendants' groundless suspension and termination of Melton in a highly publicized manner that engendered local media attention stigmatized him and irretrievably damaged his reputation in the community.

142. Defendants' groundless suspension and termination of Melton in a highly publicized manner that engendered local media attention also rendered it impossible for him to pursue his common calling by finding and maintaining work in any fire department.

143. The Due Process Clause of the Arkansas Constitution and the Fourteenth Amendment secures Melton against such arbitrary government actions.

144. Defendants have no rational interest, let alone a compelling interest, in terminating Melton in an infamous manner based on his expression of personal religious beliefs about abortion.

145. Defendants' policies – including any alleged unwritten policy requiring Defendant Williams' pre-clearance before employees publish a work – and practice thus violate the Due Process Clause of the Fourteenth Amendment because they grossly stigmatized Melton's reputation in the community and deprived Melton of his right to earn a living as a firefighter.

WHEREFORE, Plaintiff respectfully prays the Court grant the equitable and legal relief set forth in the prayer for relief.






# City of Forrest City
## *One Forrest City, One Community, One Vision*
Cedric Williams, Mayor



June 26, 2020

Steven Melton
275 SFC 311
Forrest City AR 72335

Re: Termination of Employment

Dear Mr. Melton:

Pursuant to our conversation on 6-25-2020 when you were placed on paid administrative leave for the investigation into the incident that was brought to light on 6-25-2020.

The investigation is completed, and I have decided to terminate your employment immediately as of 6/26/2020 from the City of Forrest City Arkansas.

Sincerely,

Cedric Williams, Mayor

cc: Glynis Lynch      Human Resources Director

EEOC Form 161 (11/16)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Steven S. Melton**<br>**275 SFC 311**<br>**Forrest City, AR 72335** | From: | **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |
|---|---|---|---|

[ ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2020-01728 | Rodney E. Phillips,<br>Investigator | (501) 324-6473 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]    The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*(signature)*     10-09-2020

Enclosures(s)     **William A. Cash, Jr.,**     *(Date Mailed)*
    **Area Office Director**

cc:
**Marshall Wright**             **David Hogue**
**City Attorney**                **Attorney**
**CITY OF FORREST CITY**    **HOGUE LEGAL SERVICES**
**P O Box 588**                 **575B Harkrider**
**Forrest City, AR 72335**      **Conway, AR 72034**

*F*